IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

VERONICA COOK, YOLANDA PHELPS,
CHARLYN DOZIER, AND SELEATHA MCGEE,
ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED                    PLAINTIFFS

v.                                                          No. 2:11cv41-KS-MTP

HOWARD INDUSTRIES, INC.                                     DEFENDANT

consolidated with

VERONICA COOK, et al.

                                                            PLAINTIFFS

v.                                                          No. 2:11cv199-KS-MTP

HOWARD INDUSTRIES, INC.                                     DEFENDANT

ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MOTION FOR AWARD OF ATTORNEY'S
FEES AND COST REIMBURSEMENT

This matter is before the Court on the parties' Joint Motion for Final Approval of

Class Action Settlement [38][1] and Class Counsel's Motion for Award of Attorney's Fees

and Cost Reimbursement [41].  Having considered the motions, the supporting briefs,

the submissions of the parties at the Final Fairness Hearing, and the supplemental

briefing received from the parties following the Final Fairness Hearing, the Court finds

as follows:

## I.  BACKGROUND

Plaintiffs in this case allege racial and national origin discrimination pursuant to

---

[1] All docket entry numbers listed in this Order reference filings in case number
2:11cv41.

Title 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") against Howard Industries, Inc. ("HI" or "Defendant").  Specifically, Plaintiffs allege that HI refused to hire non-Hispanic job applicants, or considered their applications with disfavor, due to their race and/or national origin at its transformer plant in Laurel, Mississippi.  On October 5, 2012, the Court entered its Memorandum Opinion and Order [34], granting Plaintiffs' Motion for Conditional Certification of the Class and for Preliminary Approval of Class Action Settlement [29].  In that Order [34], the Court certified the following Class for settlement purposes only:  "All black and non-Hispanic white persons who applied for a bargaining unit position at Howard Industries' Laurel, Mississippi transformer facility between January 1, 2003, and August 25, 2008, and were not hired."  (Mem. Op. and Order [34] at p. 24.)  The Court also preliminarily approved the proposed settlement between the parties, as evidenced by and delineated in the Stipulation and Class Action Settlement Agreement [29-2] (hereinafter referred to as the "Settlement" or "Settlement Agreement"), as fair, adequate, and reasonable, and set a Final Fairness Hearing date of January 23, 2013.  (Mem. Op. and Order [34] at pp. 25, 26.)  Prior to the Final Fairing Hearing (the "Hearing"), over 9,000 potential Class Members were each mailed a Notice of Class Action and Proposed Settlement, which included information regarding their right to opt-out and/or to object to the Settlement. Further, notice of the litigation, proposed Settlement, and Hearing was published in the Laurel Leader-Call once per week for three consecutive weeks starting November 1, 2012.

At the Hearing, counsel for the parties presented statements and documentary submissions in support of the Joint Motion for Final Approval of Class Action Settlement

[38] and Motion for Award of Attorney's Fees and Cost Reimbursement [41].  No potential Class Member had opted out or filed an objection to the proposed Settlement prior to the Hearing, and no one objected to the proposed Settlement at the Hearing. Given the Court's duty to ensure the fairness of the Settlement for the entire Class, particularly the unnamed Class Members not participating in the negotiation of the Settlement, the Court requested further briefing from the parties at the conclusion of the Hearing.  Specifically, the parties were asked to present precedent in support of their inclusion of the estimated value of seventy (70) bargaining unit positions to be offered to Qualified Class Members[2] in their valuation of the Settlement, and to address how, if at all, the valuation should be affected by the balance in the Settlement Fund reverting to HI in the event that the Fund is not exhausted by payments to Class Members.  The parties subsequently addressed those issues in their Joint Memorandum of Points and Authorities Regarding the Valuation of the Proposed Class Settlement ("Joint Memorandum") [49], and the Court is ready to rule on all pending matters.

## II.  DISCUSSION

### A.    Class Certification; Notice to Class Members; Appointment of Class Representatives; and Appointment of Class Counsel

---

[2] A Qualified Class Member is any Class Member that has provided the Claims Administrator with the Class Member's valid social security number and other tax information in the form required by law, completed a Verification Form, returned the Verification Form in the manner and time period set forth in the Verification Form, and for whom the Claims Administrator has verified that the information on the Verification Form is (a) accurate and (b) entitles the Class Member to payment of an Individual Benefit.  (*See* Settlement Agreement [29-2] at § 1.19.)  The parties have jointly selected L. Stephens Tilghman to serve as the Claims Administrator.  (*See* Settlement Agreement [29-2] at § 1.4.)  All capitalized words and terms used but not defined herein shall have the meanings set forth in the Settlement Agreement [29-2].

The Court's October 5, 2012 Order [34] certified the above-referenced Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); held that the form, content, and manner of the parties' Notice of Class Action and Proposed Settlement met the notice requirements of Rule 23(c)(2)(B) and (e)(1); appointed Plaintiffs Veronica Cook, Yolanda Phelps, Charlyn Dozier, and Seleatha McGee as representatives of the Class; and, appointed as Class Counsel the law firms of Pigott & Johnson, P.A., by Cliff Johnson, and the Law Offices of Lisa Ross, by Lisa M. Ross.  The Court has not been apprised of any facts or circumstances militating against the correctness of these rulings.  Therefore, the rulings will stand.

### B.      Final Approval of the Settlement As Fair, Reasonable, and Adequate

A district court has discretion to approve a class action settlement under Federal Rule of Civil Procedure 23(e) if the proposed "settlement is fair, adequate, and reasonable." *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004) (citing *Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. Unit A 1982)).  In assessing whether a proposed settlement satisfies this standard, the Fifth Circuit has identified six key points of analysis, known as the "*Reed* factors."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)), *cert. denied*, 133 S. Ct. 317 (2012).  These six factors are:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Id.* at 639 n.11.  The Court's prior Order [34] found that the *Reed* factors supported the

preliminary approval of the Settlement.  Now, having reconsidered the *Reed* factors in light of the absence of any objections to the proposed Settlement, the fact that no Class Member has opted out of the Class, the information presented to the Court at the Final Fairness Hearing, and the supplemental briefing provided to the Court following the Hearing, the Court finds that the proposed Settlement should be finally approved.

The Settlement Agreement provides for two alternative forms of compensation for Qualified Class Members.  First, the Settlement requires HI to establish a Settlement Fund of $1,300,000.00.  Sums are to be paid from the Fund to Qualified Class Members in varying amounts, depending upon whether a Class Member was eventually hired by HI, qualified for employment, and/or is a named Plaintiff (the "Individual Settlement Benefit").  Second, HI will offer seventy (70) Qualified Class Members a bargaining unit position in its Laurel transformer plant (the "Employment Benefit").  The seventy (70) bargaining unit positions have been valued at $25,000.00 per position for purposes of the Settlement Agreement.[3]  Qualified Class Members must initially choose between the Individual Settlement Benefit and the Employment Benefit, but any Qualified Class Member not selected for employment will receive an Individual Settlement Benefit.

In its preliminary application of the *Reed* factors, the Court determined that the parties would be required to explain fully the justification for establishing payments in varying amounts per the Individual Settlement Benefit, so as to ensure that the Settlement does not improperly grant preferential treatment to certain Class Members.

---

[3] HI has presented evidence showing that bargaining unit employees receive on average $25,000.00 per year, depending on the amount of time worked and the length of employment.

The Court finds the bases for the varying payments subsequently offered by the parties, such as the Named Plaintiffs' initiation of and participation in the lawsuit, to be sufficient.[4]  As noted above, the Court also requested further information from the parties regarding the valuation of the Settlement with respect to the reversion of any unclaimed portion of the Settlement Fund to HI, and the monetary value assigned to the seventy (70) bargaining unit positions.  The Court finds that the information and authorities presented by the parties in their Joint Memorandum [49] support their valuation of the Settlement at $3,050,000.00 ($1,300,000.00 per the Individual Settlement Benefit plus $1,750,000.00 per the Employment Benefit).  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (holding that the district court properly assessed attorney's fees based on the total fund available to the prevailing class rather than the amount actually recovered); *Parker*, 667 F.2d at 1209-10 (finding no abuse of discretion in the district court's approval of a class action settlement that provided a cash recovery in excess of $1,440,000 and "specifications of employment enhancement" valued at "approximately $1,000,000").

In consideration of the above-referenced circumstances and the record in this case, the parties' proposed Settlement will be finally approved as "fair, reasonable, and adequate" pursuant to Rule 23(e).

---

[4] "It is not unusual for a court to make an 'incentive award' to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class."  *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996) (citing *Gaskill v. Gordon*, 1995 WL 746091, *4 (N.D. Ill. Dec. 14, 1995); *White v. NFL*, 822 F. Supp. 1389, 1406 (D. Minn. 1993); *Bleznak v. C.G.S. Scientific Corp.*, 387 F. Supp. 1184, 1189 (E.D. Pa. 1974)).

C.      Attorney's Fees

Class Counsel seek an award of attorney's fees and costs in the amount of

$457,500.00.  This amount equals 15% of the Settlement value of $3,050,000.00.  HI

does not oppose Class Counsel's request for $457,500.00.  Attorney's fees and costs

are to be paid by HI outside of the Settlement Fund under the terms of the Settlement

Agreement.

The Fifth Circuit has held that in common fund cases, such as this case, district

courts enjoy discretion to award attorney's fees based on the lodestar method or the

percentage-of-the fund method, so long as their analyses are informed by the *Johnson*

reasonableness factors.  *See Dell, Inc.*, 669 F.3d at 644.  District courts within the Fifth

Circuit regularly use the percentage method cross-checked with the *Johnson* factors.

*See id.* at 643.  The U.S. District Court for the Northern District of Mississippi has found

that the percentage fee approach "is the preferred method for determining awards of

attorneys' fees in common fund . . . cases."  *Batchelder v. Kerr-McGee Corp.*, 246 F.

Supp. 2d 525, 531 (N.D. Miss. 2003) (citing *Blum v. Stenson*, 465 U.S. 886, 900, 104 S.

Ct. 1541, 79 L. Ed. 2d 891 (1984)).  The "Fifth Circuit has never reversed a district court

judge's decision to use the percentage method . . . ." *Dell, Inc.*, 669 F.3d at 644.  The

Fifth Circuit has also noted "that the percentage method is more predictable,

encourages settlement, and reduces incentives to protract litigation[.]"  *Id.* at 344 n.34

(citation omitted).  In accordance with the above-cited precedent, the Court exercises its

discretion to award attorney's fees in this class action based on the percentage-of-the

fund method, and not the lodestar approach, as informed by the *Johnson* factors.[5]

In *Dell, Inc.*, the district court found that class counsel's fee request equaling 25% of the fund was "entitled to a presumption of reasonableness", but adjusted the fee to 18% in consideration of the *Johnson* factors and the stage of litigation at which the settlement was reached.  669 F.3d at 644. The Fifth Circuit affirmed this ruling over objectors' contention that 18% was excessive because the action was terminated prior to discovery.  *Id.*  In *Batchelder*, Judge Davidson noted that most fee awards in common fund cases fall between 20% and 30%, and held that the 25% initial benchmark rate sought by class counsel was reasonable.  246 F. Supp. 2d at 531, 533 (citing *In re Catfish*, 939 F. Supp. at 501; *In re Shell Oil Refinery*, 155 F.R.D. 552, 573 (E.D. La. 1993); *Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). Class Counsel's 15% fee rate request in this case is certainly reasonable given the 20% to 30% fee rate commonly approved in common fund class actions.

The *Johnson* factors do not necessitate a downward adjustment of Class Counsel's request for attorney's fees at the rate of 15%.  "While all of the *Johnson*

---

[5] The twelve *Johnson* "factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Dell, Inc.*, 669 F.3d at 642 n.25 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

factors are not necessarily relevant under a percentage fee approach, . . . those factors are the most proper standard with which to weigh the reasonableness of a fee award." *Batchelder*, 246 F. Supp. 2d at 531.  Class Counsel have thoroughly addressed the applicability of the *Johnson* factors in their Application for Award of Attorney's Fees and Cost Reimbursement  ("Application for Award") [42], and have submitted in support thereof sworn declarations and detailed billing records.  The following are some of the grounds offered by Class Counsel as justification for the fee award:  1) they have invested approximately 552 hours prosecuting this case, and expect to spend another 200 hours implementing the Settlement; 2) the difficulty of proving a multi-year pattern of employment discrimination; 3) in general, their experience, reputation, and professional ability, as well as the adequacy of their representation in this lawsuit; 4) the customary contingency fee for representation of plaintiffs in the Southern District of Mississippi ranges from 33% to 40%; 5) they accepted these cases on a 40% contingency basis and have yet to receive any remuneration; 6) the Settlement value of $3,050,000.00, which includes the value of 70 Class Members receiving the unusual benefit of full-time employment, is substantial; and 7) the 15% fee requested by Class Counsel is significantly lower than what has been awarded on average in hundreds of other federal class action lawsuits.  The preceding grounds offered by Class Counsel are well taken.  Upon review of the entirety of the Application for Award [42], the supporting documentation, and the record in this litigation, the Court determines that the *Johnson* factors, on the whole, support Class Counsel's 15% fee request.  The absence of any objection from HI or any Class Member to Class Counsel being awarded a 15% fee further supports the award.  *See, e.g.*, *Bethea v. Sprint Commc'ns Co.*, No.

3:12cv322, 2013 WL 228094, at *5 (S.D. Miss. Jan. 18, 2013); *Batchelder*, 246 F. Supp.

2d at 533; *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).  Therefore,

Class Counsel's request for attorney's fees and costs in the amount of $457,500.00,

which is 15% of the Settlement value of $3,050,000.00, will be granted.

### III. CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that the Joint Motion for Final Approval of

Class Action Settlement [38] and Motion for Award of Attorney's Fees and Cost

Reimbursement [41] are granted.  All other pending motions are terminated as moot.

Accordingly,

### I.      CERTIFICATION OF THE CLASS FOR SETTLEMENT

For purposes of determining whether the terms of the Settlement are fair,

reasonable, and adequate, the Court hereby grants final approval of and certifies the

following Class for settlement purposes only:  All black and non-Hispanic white persons

who applied for a bargaining unit position at Howard Industries' Laurel, Mississippi

transformer facility between January 1, 2003, and August 25, 2008, and were not hired.

If for any reason the Settlement Agreement ultimately does not become effective,

HI's agreement to the certification of the Class shall be null and void in its entirety; this

Order certifying the Class shall be vacated; the parties shall return to their respective

positions in this lawsuit as those positions existed immediately before the parties

executed the Settlement Agreement; and nothing stated in the Settlement Agreement,

in settlement briefing, or in any settlement-related Order shall be deemed an admission

of any kind by any of the parties or used as evidence against, or over the objection of,

any of the parties for any purpose in this action or in any other action.

## II.   FINAL APPROVAL OF THE TERMS OF THE SETTLEMENT

The Settlement Agreement, as evidenced by and delineated in the Stipulation and Class Action Settlement Agreement [29-2], and corresponding Settlement are hereby finally approved as fair, adequate, and reasonable.

## III.   FINAL APPROVAL OF THE FORM AND MANNER OF DISTRIBUTING THE SETTLEMENT NOTICE, VERIFICATION FORM, AND INSTRUCTIONS

1.     The form and manner of distribution used to mail out the Class Settlement Notice[6] and Verification Form are hereby finally approved.

2.     Defendant's use of a third-party vendor ("Claims Administrator") to facilitate administrative matters and distributions to Qualified Class Members, in accordance with the terms and conditions of the Settlement Agreement is hereby finally approved.

3.     The Claims Administrator properly notified Class Members of their right to opt-out of the Class and/or to object to the Settlement Agreement when it mailed a copy of the Class Settlement Notice incorporating the Final Fairness Hearing date and all other appropriate deadlines to the current address of each Class Member as provided by the National Change of Address service.  The Class Settlement Notices were sent by first class mail, and the costs of sending the same were paid by Defendant.  The Claims Administrator used reasonable efforts to complete the mailing of the Class Settlement Notice within thirty days of the date of entry of the Preliminary Approval Order.  Class

---

[6] Again, all capitalized words and terms used but not defined herein shall have the meanings set forth in the Settlement Agreement [29-2].

Settlement Notices that were returned as undeliverable were forwarded to any forwarding address provided by the U.S. Postal Service.

    4.    The parties did not receive any requests from Class Members to opt-out of the Settlement.  Accordingly, each Class Member shall waive and forfeit any and all rights that he or she may have to appear separately and/or to object and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the litigation.

    5.    The Claims Administrator, in consultation with HI, shall evaluate, and approve as valid or disapprove, all Verification Forms timely sent by persons seeking to receive an Individual Settlement Benefit under the Settlement if, after 30 days from the entry of this Order and the accompanying judgment, no notice of appeal of the judgment or notice of appeal of any order in the Action has been filed, the time provided for in Rule 4 of the Federal Rules of Appellate Procedure to take any such appeal has expired, and any right to take such appeal has been waived or otherwise lost, or if each such appeal that has been taken has been finally adjudicated and the judgment and Final Approval Order has been upheld in all respects by each such final adjudication.

**IV.    CLASS COUNSEL'S APPLICATION FOR ATTORNEY'S FEES AND COST REIMBURSEMENT**

Class Counsel are awarded $457,500.00 to be paid by HI outside of the Settlement Fund.

**V.    DEADLINE FOR SUBMITTING CLAIM FORMS AND REVERSION OF**

**SETTLEMENT FUND**

Each Qualified Class Member who wishes to receive an Individual Settlement Benefit pursuant to the Settlement must complete in full, and send to the Claims Administrator, by first-class United States Mail, postmarked by the United States Postal Service no later than sixty days following the date of Final Approval, a completed Verification Form, signed under penalty of perjury and dated.  Subject to the terms and conditions of the Settlement Agreement, the Claims Administrator shall make payments of Individual Settlement Benefits from the Settlement Fund to the Named Plaintiffs and Qualified Class Members.

## VI.    PLAINTIFFS' AND CLASS MEMBERS' RELEASE

By operation of the entry of the judgment and this Order, Plaintiffs, on behalf of the Class, Class Counsel, and each individual Class Member, forever and fully release Defendant and all Released Parties (as that term is defined in the Settlement Agreement), from: (i) conduct occurring on or before August 25, 2008, any and all past and present matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise which any Class Member has or might have, known or unknown, including Unknown Claims (as that term is defined in the Settlement Agreement), of any kind whatsoever, including, but not limited to, claims of discrimination based on race and national origin; and (ii) all potential or actual matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind (including those that are Unknown Claims) that are based in whole or in part on an allegation that

HI failed to hire an individual, regardless of when the actions relating to the individual's application for employment or the failure to hire occurred.

In addition, Defendant may require each Qualified Class Member who is offered a bargaining unit position as part of this Settlement or to whom any payment is to be made under the Settlement Agreement (or any person to whom a payment in respect of such Qualified Class Member is to be made) to execute, in connection with such payment, an individual Release of Claims not inconsistent with the release described herein.

## VII.   RELEASE OF FEES AND COSTS FOR SETTLED MATTERS

Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsels' representation of Plaintiffs and the Class upon Final Approval.  Any fee payments made pursuant to Section IV above will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsels' representation of the Class Members.

## VIII.   REVERSION OF FUNDS TO DEFENDANT

In the event that there is a remaining balance in the Settlement Fund after all Qualified Class Members who timely applied are paid, any such Unclaimed Funds shall revert to Defendant.

## IX.   NO FURTHER OBLIGATION

-14-

The Settlement Amount, as that term is defined in the Settlement Agreement, and the attorneys' fees awarded by the Court to Class Counsel are Defendant's maximum financial obligations under the Agreement.

**X.      NO ADMISSION OF LIABILITY**

The parties entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims.  Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiffs and the Class, individually or collectively.  Defendant express denies all such liability.  Defendant enters into this Settlement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.

Wherefore, for all the reasons stated above, and based upon the totality of the record before this Court, the Settlement is determined to be fair, reasonable, and adequate.  And, it is so ordered that this Court grants final approval to the Settlement Agreement, as this Settlement is fair, reasonable, and adequate.  A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 11th day of March, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE